552 A.2d 342

Philadelphia Electric Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued September 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO and MCGINLEY.

*David H. Weinstein,* with him, *Jeanne P. Wrobleski* and *Marion K. Littman, Kohn, Savett, Klein & Graf, P.C.,* Of Counsel: *Edward G. Bauer* and *Eugene J. Bradley,* Philadelphia Electric Company, for petitioner.

*Terrence J. Buda,* Assistant Counsel, with him, *Frank B. Wilmarth,* Deputy Chief Counsel, and *Daniel P. Delaney,* Chief Counsel, for respondent.

*Philip F. McClelland,* Assistant Consumer Advocate, with him, *Pamela B. Sarvey,* Assistant Consumer Advocate, and *David M. Barasch,* Consumer Advocate, for intervenor, Office of Consumer Advocate.

*David Kairys, Kairys & Rudovsky,* for intervenor, Keystone Alliance, et al.

OPINION BY JUDGE PALLADINO, January 3, 1989:

Philadelphia Electric Company (PECO) has petitioned for review of a decision of the Pennsylvania Pub-

lic Utility Commission (PUC) entered April 28, 1987 (C-78080459).

The present dispute focuses on expenditures PECO has charged to its ratepayers pursuant to various tariff filings in effect since November 23, 1983. The case has a long and complicated history and a recitation of that history is necessary to properly frame the issues.

In 1978, Keystone Alliance and others (Complainants)[1] filed a complaint with the PUC against PECO, alleging that PECO had wrongfully and illegally spent ratepayers' money on surveillance of persons and groups opposed to PECO's policies regarding nuclear power. Complainants sought, *inter alia,* a full investigation of PECO's surveillance activities, an order directing PECO to cease and desist from all surveillance activities, and an order directing PECO to return to ratepayers all ratepayer money spent on surveillance. PECO filed an answer and requested that the complaint be dismissed. On August 3, 1979, an Administrative Law Judge (ALJ) issued an interim decision in which the ALJ concluded that the PUC had jurisdiction over the complaint because of the allegation of inclusion of improper expenses in PECO's rate base. The ALJ also concluded that Complainants would have the burden of proving that PECO had included improper expenses in its rate base.[2]

---

[1] The parties named as complaining parties in the complaint are: Keystone Alliance, Consumers Education and Protective Association, American Friends Service Committee, Germantown Association for Safe Power, Main Line Natural Guard, Citizens for Efficient Energy Use, Limerick Ecology Action, William H. Moyer, Douglas Baker, Kathleen N. Edwards, Paul Wingate, Reverend David M. Gracie, Lee Frissel, William F. Edwards, and June S. Krebs.

[2] The ALJ also concluded that the PUC was without authority to enjoin PECO's alleged surveillance activities.

Thereafter, Complainants amended their complaint to allege that PECO's surveillance activities were part of an overall promotion effort by PECO designed to gain acceptance of nuclear power, and that PECO was expending ratepayers' money to support its side of a controversial public debate. Hearings were conducted, with the evidence limited to PECO activities in which PECO had engaged in actions and/or expenditures related to nuclear generation of electricity.

On August 31, 1983, the ALJ issued a 275 page initial decision. The ALJ concluded that many of PECO's expenses constituted imprudent expenditures of ratepayers' money because the expenditures were of no direct benefit to ratepayers. For example, PECO spent large sums of ratepayer money on programs and materials for its Energy Education Advisory Council (EEAC). The EEAC provides energy materials to educational institutions, from elementary school to college, and to community groups. The ALJ agreed with Complainants that the EEAC materials were, in important respects, biased in favor of PECO's energy policy positions. The ALJ concluded that the EEAC had no existence independent of PECO and that the EEAC simply put forth PECO's policy in favor of nuclear energy. Similarly, the ALJ found that numerous organizations which received money from PECO were industry associations which pool their funds in order to pay for national public relations efforts in support of the use of nuclear energy. Thus, the ALJ concluded that PECO expenditures to the Utility Nuclear Waste Management Group (UNW MG), Life Jobs, American Nuclear Society, and Americans for Energy Independence could not properly be charged to ratepayers because those expenditures were of no direct benefit to ratepayers. The ALJ also concluded that PECO's "Speakers Bureau," within PECO's Corporate Communications Department, was designed to influence schools, civic organizations and religious in-

stitutions with regard to PECO policies. The ALJ found that the publications of the Speakers Bureau were stridently pro-nuclear and another aspect of PECO's massive public relations campaign on behalf of nuclear energy. The ALJ concluded that many of PECO's expenditures for Speakers Bureau activities, including the salaries of PECO employees who spent their time on such activities, were of no direct benefit to the ratepayers.

Exceptions to the ALJ's initial decision were filed, and on September 4, 1985, the PUC entered an order denying all exceptions and adopting the initial decision of the ALJ. The PUC order was not accompanied by an opinion. PECO filed, with this court, a petition for review from the PUC's 1985 order. Thereafter, the PUC entered a tentative amended order. The parties stipulated, with this court's approval,[3] that PECO's petition for review would be deemed taken from the PUC's forthcoming final amended order. On April 28, 1987, the PUC entered the final amended order from which PECO has appealed.

The PUC's final decision provides:

Except as they are amended by the foregoing discussion and conclusions, we affirm both the September 4, 1984 Order, which adopted the Initial Decision of ALJ KRANZEL, dated August 31, 1983, and our Tentative Amended Order, issued February 19, 1986. We incorporate herein, the findings, conclusions and directives contained in the Initial Decision, to the extent that they are consistent with this Final Amended Order, THEREFORE,

---

[3] The order approving the stipulation was issued January 3, 1986. *See* section 703(g) of the Code, 66 Pa. C. S. §703(g), for the PUC's authority to amend its orders.

IT IS ORDERED:

1. That all expenditures by PECO on be-half of its Energy Education Advisory Council (EEAC) programs, including program materials, payments to consultants and salaries of PECO employees engaged in EEAC-related activities, shall henceforth be classified as a contribution, with such expenditures being disallowed as an expenditure to be borne by the ratepayers.

2. That the salary, including fringe benefits, of Ms. Mollie McCormick of PECO's Law Department shall henceforth be classified entirely as lobbying and, therefore, disallowed as an expense charged to the ratepayers.

3. That all payments to Reverend Cecil D. Gallup, a consultant to the Corporate Communications Department, shall be classified entirely as lobbying, and therefore, disallowed as an expense charged to the ratepayers.

4. That the salaries, including fringe benefits of all PECO employees engaged in Speakers Bureau activities shall be reported to the PUC and a calculation shall be made in order to determine that proportion of each employee's time spent on Speakers Bureau activities, so that in future rate cases an appropriate disallowance shall be made for the amount of time spent by PECO employees which is of no direct benefit to ratepayers.

5. That expenditures by PECO on behalf of the Utility Nuclear Waste Management Group (UNMWG) shall be classified as a contribution and, therefore, shall not be chargeable to the ratepayers.

6. That expenditures by PECO on behalf of Life Jobs shall be classified as a contribution

and, therefore, shall not be chargeable to the ratepayers.

7. That expenditures by PECO on behalf of the American Nuclear Society shall be classified as a contribution and, therefore, shall not be chargeable to the ratepayers.

8. That expenditures by PECO on behalf of Americans for Energy Independence shall be classified as a contribution and therefore, shall not be chargeable to the ratepayers.

9. That in all future rate proceedings, PECO is required to specify hours spent by PECO in lobbying and to notify the PUC as to the same, so that such expenditures will no longer be borne by the ratepayers.

10. That all litigation costs incurred by PECO in the instant case (Keystone Alliance v. Philadelphia Electric Company, Docket No. C-78080459) shall be disallowed as an expense to be borne by the ratepayers in any future rate proceedings where allowances for such costs are requested.

11. That in all future rate proceedings PECO is required to specify any payments to industry associations such as the Atomic Industrial Forum, the Edison Electric Institute, the Pennsylvania Electric Association and any other industry association to which PECO pays monies, either on behalf of PECO or its employees, in order to determine whether any such expenditures are of a direct benefit to the ratepayers.

12. That for those expenses which are disallowed in the preceding Ordering Paragraphs, but which have been recovered by PECO through base rates in effect during the period November 23, 1983 to June 26, 1986, PECO is

directed to refund to its customers the amount of $2,416,643.

13. That the refunds are to be made across-the-board, in equal percentages, over a period not to exceed three months, commencing no later than thirty days from the entry of this Final Amended Order.

14. That PECO must notify the Commission, within thirty days of the end of the refund period, that it has complied with the directives contained in the preceding Ordering Paragraph.

15. That a copy of this Final Amended Order be served upon all parties to this proceeding at Docket No. C-78080459.

16. That all Exceptions to the Tentative Amended Order are granted or denied consistent with our determinations herein.

*Keystone Alliance v. Philadelphia Electric Co.,* 63 Pa. PUC 571, 577-78 (1987).

The effect of the order in question is to disallow certain expenses which PECO has included in its rate base and charged to its ratepayers. However, the procedure utilized by the PUC to achieve this end has resulted in a remarkably complicated case. The complication stems from the fact that PECO sought and received four rate increases[4] between 1978, when the complaint was instituted, and 1987, when the PUC issued its final amended order. PECO rates established in R-822291 went into effect on November 23, 1983 and rates established in R-842590 went into effect in January, 1985. In R-842590, the PUC declined to rule on the issue of political advertising because it had not yet issued a final decision in the complaint proceeding. In the rate proceed-

---

[4] Specifically, rates established in R-79060865, R-822291, R-842590 and R-850152.

ing at R-850152, with rates going into effect on June 27, 1986, the PUC did address the political advertising issue and disallowed $741,012 of PECO's claimed expenses for certain nuclear information, education, and advertising. Thus, the PUC order in the complaint proceeding, which ordered a refund of rates PECO charged between November 23, 1983 and June 26, 1986, is directed to PECO rates established in the rate proceedings at R-822291 and R-842590.

PECO has raised numerous issues. We shall address the following three: (1) whether the PUC decision impermissibly restricts PECO's freedom of speech and is therefore violative of the First Amendment; (2) whether the PUC erred in ordering a refund of rates previously approved by final PUC orders; and (3) whether the burden of proof was improperly placed on PECO in the complaint proceeding.[5] Our scope of review is limited to a determination of whether an error of law has been committed, constitutional rights have been violated or if there is substantial evidence to support findings, determinations or the order of the PUC. *Carbonaire Company, Inc. v. Pennsylvania Public Utility Commission,* 114 Pa. Commonwealth Ct. 124, 538 A.2d 959 (1988).

PECO first argues that the PUC order impermissibly restricts PECO's freedom of speech and is therefore violative of the First Amendment. We disagree. The order does not prohibit PECO from engaging in speech; instead, it prevents PECO from charging ratepayers for expenses of communications which are of no direct ben-

---

[5] The other issues raised by PECO are as follows: whether the PUC erred in its calculation of what percentage of PECO's communications concern nuclear power; whether the PUC erred in imposing sanctions; and whether the PUC erred in declining to apply an amendment to section 1316 of the Code. Our resolution of the case makes discussion of these issues unnecessary.

efit to the ratepayers. Thus, PECO shareholders/investors would be required to pay for those communications which are of no direct benefit to ratepayers.

PECO argues that the disallowance of communication expenses must be based on the content of the communication, *i.e.*, in order to determine whether communications benefit ratepayers, the PUC will, perforce, be evaluating the content of the communications. While we agree that there will necessarily be a measure of content-based analysis of communications, we cannot conclude a utility should be free to use ratepayers' money to put forth whatever communication the utility deems appropriate. We emphasize that utilities are completely unfettered in determining what communication they choose to disseminate; our holding is directed only to the question of who shall bear the burden of the expenses attached to the dissemination of information.

A fundamental tenet of public utility law is that utility rates are to be just and reasonable. Section 1301 of the Public Utility Code (Code), 66 Pa. C. S. §1301. In *Pennsylvania Power & Light v. Pennsylvania Public Utility Commission,* 101 Pa. Commonwealth Ct. 370, 516 A.2d 426 (1986), we held that the utility's shareholders/investors were properly charged with the burden of excess capacity until such time as the utility could show that the capacity was used and useful. In *Park Towne v. Pennsylvania Public Utility Commission,* 61 Pa. Commonwealth Ct. 285, 433 A.2d 610 (1981), we held that utility customers were not required to reimburse the utility for expenditures imprudently made. *Id.* at 295-96, 433 A.2d at 615-16 (citing *Pennsylvania Public Utility Commission v. Pennsylvania Gas & Water Co.,* 492 Pa. 326, 424 A.2d 1213 (1980), *cert. denied,* 454 U.S. 824 (1981)).

Furthermore, our decision is in accord with recent United States Supreme Court pronouncements on the

issue of the freedom of speech of utilities. In *Consolidated Edison Co. v. Public Service Commission of N.Y.,* 447 U.S. 530 (1980), the Supreme Court held that a Public Service Commission order prohibiting "utilities from using bill inserts to discuss political matters, including the desirability of future development of nuclear power"[6] violated a utility's freedom of speech. In that case, the Commission argued that its prohibition prevented ratepayers from subsidizing the costs of the utility's policy oriented bill inserts. The Supreme Court noted, however, that the Commission decision was not based on an allocation of the costs of such communication. Thus, the Supreme Court stated: "Accordingly, there is no basis on this record to assume that the Commission could not exclude the cost of these bill inserts from the utility's rate base." *Id.* at 543.

Based on the foregoing, we conclude the PUC is empowered to disallow expenses of a utility that it concludes are of no direct benefit to ratepayers. We are not inclined to offer a test or "laundry list" of factors which would make certain communications of no direct benefit to ratepayers.[7] However, we agree with the PUC that,

---

[6] *Id.* at 532.

[7] We note that the Pennsylvania legislature has acted to provide guidance in future cases. In 1984 the legislature added, by Section 2 of the Act of March 7, 1984, P.L. 104, Section 1316 to the Code, 66 Pa. C. S. §1316. Section 1316 was amended in 1986 and provides as follows:

§1316. Recovery of advertising expenses

(a). General rule.—For purposes of rate determinations, no public utility may charge to its consumers as a permissible operating expense for ratemaking purposes any direct or indirect expenditure by the utility for political advertising. The commission shall also disallow as operating expense for ratemaking purposes expenditures for other advertising, unless and only to the extent that the commission finds that such advertising is reasonable and meets one or more of the following criteria:

in this case, PECO engaged in a broad and ratepayer-financed public relations campaign designed to gain acceptance of nuclear power. We do not dispute that PECO has every right to seek to persuade the public that nuclear power is safe, necessary and cost-effective.

(1) Is required by law or regulation.

(2) Is in support of the issuance, marketing or acquisition of securities or other forms of financing.

(3) Encourages energy independence by promoting the wise development and use of domestic sources of coal, oil or natural gas and does not promote one method of generating electricity as preferable to other methods of generating electricity.

(4) Provides important information to the public regarding safety, rate changes, means of reducing usage or bills, load management or energy conservation.

(5) Provides a direct benefit to ratepayers.

(6) Is for the promotion of community service or economic development.

(b) **Charging expenses to stockholders.**—Any direct or indirect expenditure by a public utility for political advertising, or any other advertising not meeting the criteria set forth in subsection (a), shall be charged to its stockholders and shall not be included as an operating expense for ratemaking purposes.

(c) **Filing of information and materials.**—Whenever a public utility proposes a change in rates under section 1308 (relating to voluntary changes in rates), the public utility shall file with the commission a listing of each type of advertising prepared, distributed or presented by the public utility or to be prepared, distributed or presented by the public utility during the test year utilized by the public utility in discharging its burden of proof, and a listing of each type of advertising prepared, distributed or presented by the public utility during the year immediately preceding the test year, as well as an accounting of the expenditures by the public utility for such advertising, to the extent such advertising is proposed to be included as operating expense for ratemaking purposes. The filing requirements imposed by this subsection shall not be con-

However, PECO is not free to expend ratepayers' money in a broad public relations campaign in support of nuclear energy. The role of nuclear power in our society is a subject upon which reasonable minds differ, and the shareholders/investors of a utility seeking to gain acceptance of its belief that nuclear power is appropriate should bear the cost of promoting that belief.

Having concluded that the decision of the PUC does not impermissibly infringe on PECO's freedom of speech, we are nonetheless constrained to conclude that the procedure in this case is fatally flawed. PECO asserts that the refund ordered in this case is improper because it orders a return of revenues collected pursuant to rates the PUC approved in prior rate proceedings. We agree.

The PUC argues that in the rate proceedings at issue it deferred resolution of the issue involved in the present complaint proceeding. Therefore, the PUC asserts, PECO was on notice that the rates approved in 1983 and 1985 were conditioned on the outcome of the present case. We cannot agree.

In its decision in the rate proceeding at R-79060865, which established rates for the period beginning May 9,

strued to limit the right of any party to discovery under this or any other provision of law.

(d) **Definition.**—As used in this section the term 'political advertising' means any advertising for the purpose of influencing public opinion with respect to any legislative, administrative action or candidate election or with respect to any controversial issue to be decided by public voting. The term includes money spent for lobbying but not money spent for appearance before regulatory or other governmental bodies in connection with a public utility's existing or proposed operations.

Although §1316 is not applicable to the present proceeding, because it was enacted to become effective on July 10, 1986, it is evidence of the legislature's agreement with the PUC's decision to disallow certain expenses of a public utility.

1980, the PUC discussed the issues of promotional and political advertising and adopted the ALJ's conclusion adopting a promotional advertising standard. However, with respect to political advertising the PUC stated:

> Office of Consumer Advocate reiterates its argument that a decision on this portion of the standard be deferred until a decision is reached in C-78080549 Keystone Alliance v. Philadelphia Electric Co. (OCA exceptions p. 42).

> We adopt the ALJ conclusion and reasoning which accepts the promotional advertising standard. However, we reject the ALJ recommendation on political advertising and deny the respondent's exceptions.

> Instead we grant the OCA exceptions, since we recognize the Keystone case to be a more appropriate forum for the resolution of this issue.

*Pennsylvania Public Utility Commission v. Pennsylvania Electric Co.,* 54 Pa. PUC 220, 241 (1980). In the rate proceeding at R-822291, the PUC made no mention of the political advertising issue. *Pennsylvania Public Utility Commission v. Pennsylvania Electric Co.,* 58 Pa. PUC 7 (1983). In the rate proceeding at R-842590, the PUC stated as follows:

> The OCA witness Knudsen proposes to disallow recovery of $4.7 million for expenses relating to the above referenced items. As support, the OCA relies on Administrative Law Judge KRANZEL's Initial Decision in Keystone Alliance v. Philadelphia Electric Co. Docket No. C-78080459, where judge [sic] KRANZEL determined that certain nuclear related public relations expenses should not be borne by PECO's ratepayers.

> The Company notes that it has filed exceptions in Keystone Alliance and a final Commission order has not been entered. Further, the Compa-

ny contends that if an adjustment is made, the amount should only be $2.8 million since the Keystone Alliance Initial Decision would allow expenses for PECO's Corporate Communications Department based on 1978 cost levels.

The ALJ agreed that since the Commission had not issued a final order at Docket Number C-78080459, adopting the OCA's proposed adjustment would be premature. The OCA excepts to the ALJ's recommendation and emphasizes that the Commission should act now to remove these objectionable expenses.

We agree with the ALJ's recommendation since we cannot support an adjustment which is based on an Initial Decision which has not yet been adopted by the Commission. Accordingly, the OCA's exception is denied.

*Pennsylvania Public Utility Commission v. Philadelphia Electric Co.,* 58 Pa. PUC 743, 797-98 (1985).

We cannot agree with the PUC that its pronouncements in the above-noted rate cases somehow deferred, transferred or reserved the issue of nuclear information, education and advertising expenses to the complaint proceeding. We are aware that the PUC is a greatly burdened agency which works within severe time constraints in order to fulfill its duties. However, whatever the burdens the PUC faces, we cannot approve its action in reaching back into two rate proceedings it had finally decided and changing the rate structure it had approved in those rate proceedings.

PECO's third argument, regarding burden of proof, is intertwined with this deferral issue. Sections 315(a) and 332(a) of the Code, 66 Pa. C. S. §§315(a) and 332(a), allocate the burden of proof in various cases as follows:

**§315. Burden of proof**

(a) Reasonableness of rates.—In any proceeding upon the motion of the commission, in-

volving any proposed or existing rate of any public utility, or in any proceedings upon complaint involving any proposed increase in rates, the burden of proof to show that the rate involved is just and reasonable shall be upon the public utility. The commission shall give to the hearing and decision of any such proceeding preference over all other proceedings, and decide the same as speedily as possible.

**§332. Procedures in general**

(a) Burden of proof.—Except as may be otherwise provided in section 315 (relating to burden of proof) *or other provisions of this part* or other relevant statute, the proponent of a rule or order has the burden of proof.

The ALJ concluded, despite these mandates, that the PUC's discussion of the political advertising issue in R-79060865 had resulted in the transfer of the political advertising issue to the complaint proceeding. The ALJ also concluded that by "transferring" the issue, the PUC also "transferred" the burden of proof. Thus, the ALJ determined that, in the complaint proceeding, PECO bore the burden of proving that its rates were just and reasonable. The PUC, while not adopting the ALJ's reasoning, stated as follows:

PECO also contends in its Exceptions, at pages 6 and 7, that it is legal error for the Commission to direct the Company to quantify the impact of the disallowed expenses upon the rates established in the investigation at Docket No. R-822291 since the Complainants, including the OCA, have the burden of proof in this proceeding.

If the Complainants and the OCA had the data at their disposal with which to quantify the expense disallowances, the Company's position on

this issue might have some merit. However, the OCA correctly reasons that,

> Regardless of who has the burden of proof, PECO has exclusive access to the information which is necessary to quantify the adjustment. The Complainants have no means by which to prove the *amount* of these expenses without discovering that information from PECO. The Commission chose to forego the time-consuming and unnecessary procedure of reopening the hearings so that the Complainants can discover information from PECO, and then put that information on the record.

> (OCA Reply Exceptions, p. 3).

> We agree with the OCA. Therefore, the exception filed by the Company regarding burden of proof is denied.

*Keystone Alliance,* 63 Pa. PUC at 574.

As the above discussion makes clear, the tortured procedure in the complaint proceeding has resulted in a decision which simply cannot stand. The money the PUC directed PECO to refund was collected pursuant to rates established in 1983 and 1985. The complaint was instituted in 1978 and the rates complained of were the rates in effect at that time. Our review of the PUC's decisions in the relevant rate proceedings demonstrates that, assuming the PUC is empowered to transfer issues from a rate proceeding to a complaint proceeding,[8] the PUC did not actually make such a transfer of the political activity issue to this complaint proceeding. If the PUC did not "transfer" the political advertising issue from the 1983 and 1985 rate cases, then the PUC had no authority to order refunds collected pursuant to rates established in the 1983 and 1985 rate cases.

---

[8] We are in no way approving or recommending such a procedure.

Thus, the PUC order insofar as it orders a refund[9] of rates collected from November 23, 1983 to June 26, 1986 will be vacated. This matter will be remanded to the PUC so it may take such action as necessary to allow PECO to recover the money it refunded pursuant to the PUC order appealed from.

ORDER

AND NOW, January 3, 1989, the PUC order insofar as it orders a refund of money collected from November 23, 1983 to June 26, 1986 is vacated. This matter is remanded to the PUC so it may take such action as necessary to allow PECO to recover the rates it refunded pursuant to the PUC order appealed from.

Jurisdiction relinquished.

Judge MACPHAIL did not participate in the decision in this case.

---

[9] Our decision is directed to those portions of the PUC order which deal with the ordered refund. We will not rule on those paragraphs which are directed to future proceedings, inasmuch as any issues raised by those paragraphs are not before us in this case.

---

DISSENTING OPINION BY JUDGE COLINS:

I dissent from the majority opinion insofar as it vacates the PUC's order mandating a refund of rates collected from November 23, 1983, to June 26, 1986.

The petitioner is free to pursue whatever political agenda it wishes. However, the cost of supporting such political activities must be borne by the shareholders and not by the ratepayers.

The majority by declaring the rate-making methodology invalid is, in effect, allowing the petitioner to accomplish exactly what the majority opinion states the petitioner cannot do.

I see no error in the PUC's methodology, and I would affirm the PUC's order in its entirety.

President Judge CRUMLISH, JR. and Judge BARRY join in this opinion.